WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peggy J. Partica,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV-12-01201-PHX-JAT<br><br>**ORDER** |

  Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title II application for disability insurance benefits and Title XVI application for supplemental security income based on disability.

**I.  PROCEDURAL BACKGROUND**

  Plaintiff Sheeah Savage filed Title II and Title XVI applications for Disability Insurance Benefits and Supplemental Security Income benefits in June 2004 and alleged that her disability began in September 2002. (Record Transcript ("TR") 32, 83-85, 92, 452-459). Plaintiff was last insured for the purposes of Disability Insurance Benefits on December 31, 2008. (TR 87). Plaintiff's applications were denied initially. On October 20, 2006, a hearing was held before an ALJ, who issued an unfavorable decision on November 22, 2006. (TR 871, TR 474-481). On July 31, 2007, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for further proceedings. (TR 488-490). Thereafter, on November 28, 2007, another hearing was held before the

ALJ, who issued an unfavorable decision on March 11, 2008. (TR 898, TR 575-582). On August 24, 2010, the Appeals Council vacated the second hearing decision and remanded the case to a different ALJ for further proceedings. (TR 586-589). On November 23, 2010, a third hearing was held before an ALJ, who issued an unfavorable decision on February 10, 2011. (TR 22-32). On April 23, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's February 10, 2011 decision. (TR 10-12).

On June 6, 2012, Plaintiff filed her Complaint for Judicial Review of the Administrative Determination of Claim, which is the subject of this appeal (Doc. 1). Plaintiff argues that the Court should vacate the Administrative Law Decision because: (1) the ALJ erred in failing to comply with the order of the Social Security Administration Appeals Council on remand when the ALJ failed to properly evaluate Plaintiff's mental impairments and failed to provide a determination of Plaintiff's capacities that was supported by the record; and (2) the ALJ erred by relying on the opinion of a one-time examining physician and rejecting the assessment of the treating nurse practitioner. (Doc. 19).

## II.   LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the administrative law judge's conclusions and the evidence that detracts from the administrative law judge's conclusions. *Id.* If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *Id.*

Additionally, the administrative law judge is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick,* 157 F.3d at 721.

The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether

the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* at § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* at § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* at § 404.1520(a) (4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* at § 404.1520(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* at § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* at § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* at § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* at § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

In this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful

- 4 -

activity since September 1, 2002, (2) had the following severe impairments when considered in combination: fibromyalgia, degenerative disc disease of the lumbar/cervical spine, migraine headaches, and is status-post carpal tunnel release, (3) did not have an impairment or combination of impairments specifically listed in the regulations, (4) had the ability to perform the exertional requirements of light, unskilled work, (5) could not perform her past relevant work, and (6) could perform jobs that exist in significant numbers in the national economy, such as assembler, cashier, and a quality control inspector.  (TR 22-32).

### III.   ANALYSIS

#### A.   Whether the ALJ Erred in Failing to Comply with the Order of the Social Security Administration Appeals Council on Remand

This Court previously held that it is not the Court's province to determine whether the ALJ did or did not follow the Appeals Council's remand Order, but rather it is the Court's duty to determine whether the ALJ erred in determining that Plaintiff was not disabled within the meaning of the Social Security Act.  *See Savage v. Astrue*, CV 11-2103-PHX-JAT, 2013 WL 551461, at *3-4 (D. Ariz. Feb. 13, 2013).  In her Reply Brief, Plaintiff agrees with that analysis.  (Doc. 28 at 2).

As such, the Court will only consider Plaintiff's arguments regarding the ALJ's failure to follow the Appeals Council's remand order to the extent they are relevant to the ALJ's ultimate decision regarding Plaintiff's disability.  In that regard, Plaintiff argues that (1) the ALJ did not provide proper reasons for discrediting Plaintiff's subjective complaints; (2) the ALJ did not provide specific findings and appropriate rationale in finding that Plaintiff did not have severe mental impairments; and (3) the ALJ erred in determining Plaintiff's residual functional capacity.

#### 1.   Whether the ALJ Properly Discredited Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in finding that claimant's subjective complaints about her pain were not fully credible.  Plaintiff argues that the ALJ gave only two reasons for discounting Plaintiff's subjective complaints, namely that the medical

evidence of record did not substantiate the level of pain or the degree of limitation Plaintiff was reporting and that Plaintiff's daily activities were not consistent with her allegation of disability. Plaintiff argues that the ALJ's reasoning was improper. Plaintiff argues that the ALJ improperly considered the lack of objective medical evidence because the ALJ must only rely on medical evidence of an underlying medical impairment and must not look for medical evidence of the severity of symptoms.

While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001); *Fair*, 885 F.2d 597, 602 (9th Cir. 1989), the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003). Factors that the adjudicator should consider when making such credibility determinations include the nature, location, onset, duration, frequency, radiation, and intensity of any pain, precipitating and aggravating factors (e.g., movement, activity, environmental conditions), type, dosage, effectiveness, and adverse side-effects of any pain medication, treatment, other than medication, for relief of pain, functional restrictions, and the claimant's daily activities. *Bunnell*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing SSR 88–13, 1988 WL 236011 (July 20, 1988)). "Although an ALJ 'cannot be required to believe every allegation of disabling pain,' the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza*, 50 F.3d at 750 (quoting *Bunnell*, 947 F.2d at 345-46 and *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

"[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603. "An adjudicator may also use 'ordinary techniques of credibility evaluation' to test a claimant's credibility." *Id.* (internal citation omitted). "So long as

the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." *Id.*

In this case, the ALJ relied not only on the objective medical evidence in finding that Plaintiff's subjective complaints were not fully credible, he also relied on Plaintiff's daily activities. The ALJ specifically relied on the improvements that Plaintiff had experienced with her back pain and that medication substantially helped Plaintiff. (TR 29). As argued by the Commissioner, the objective evidence in the record as a whole supports the ALJ's reliance. Specifically, the objective medical evidence revealed lumbar spine ranges of motion of flexion of fingertips to ankles with full extension, normal lower extremity muscle strength without atrophy, intact lower extremity sensory functioning, normal lower extremity reflexes, negative straight leg testing, normal gait and station, and the ability to perform easily position changes between sitting/standing, sitting/supine, and mounting/dismounting the examination table, only slight abnormalities in the x-rays, and mild to moderate abnormalities and the absence of central canal stenosis at various disc levels. (Doc. 25 at 14). The objective evidence further revealed a supple neck, normal neck movement, including full neck flexion and extension without behavioral pan signs, normal extremity ranges of motion, including full wrist, shoulder, and elbow ranges of motions, normal upper extremity motor functioning, normal upper extremity muscle strength without atrophy, and normal upper extremity reflexes. (*Id.* at 14-15).

Objective evidence also showed treatment and medications were somewhat effective. ( *Id.*). Physical therapy was effective for Plaintiff's neck and back pain and the right carpal tunnel release and right thumb surgery were helpful. (*Id.* at 16). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v.*

*Heckle*r, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)).  Moreover, the ALJ's residual functional capacity assessment was consistent with the findings of Dr. Palmer and Dr. Mullon.

Further, in accordance with the factors to consider under SSR 88–13, the ALJ considered evidence of daily activities.  Such consideration is not improper.  *See Fair,* 885 F.2d at 603 ("More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").  The ALJ took into account Plaintiff's daily activities of laundry, cleaning, shopping, managing money, attending college, and engaging in her hobby of making beaded jewelry in determining that Plaintiff's subjective complaints were not fully credible.  (TR. 29).

Accordingly, the ALJ relied on several factors when determining that Plaintiff could perform certain work, including evidence of improvement in her medical records, her daily activities, and her ability to attend college

Based on foregoing, the ALJ's credibility finding was a "reasonable interpretation" of the evidence and was supported by substantial evidence in the record, and as such, "it is not [the Court's] role to second-guess it." *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604). Therefore, the ALJ did not err in discounting Plaintiff's subjective complaints.

### 2. Whether the ALJ Provided Specific Findings and Appropriate Rationale in Finding that Plaintiff did not have Severe Mental Impairments

Plaintiff argues that the ALJ erred at Step Two in finding that Plaintiff's mood disorder was not severe.  Plaintiff argues that the ALJ erred because his conclusion that Plaintiff's mood disorder was not a severe impairment was solely based on 2006 Global Assessment of Functioning ("GAF") scores.

In addition to the five-step sequential evaluation discussed above, when evaluating

- 8 -

the severity of mental impairments for adults, the ALJ is required to assess the functional limitations of the claimant in relation to four broad categories: daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. 20 CFR § 404.1520a. When rating the categories of daily living, social functions, and concentration, persistence, or pace, the ALJ is to use a five point scale of none, mild, moderate, marked, and extreme. *Id.* When rating decompensation, the ALJ is to use a four point scale of none, one or two, three, or four or more. *Id.* After rating the degree of functional limitation, the ALJ determines the severity of the mental impairments. If the ALJ finds that there are severe mental impairments that do not meet or are equivalent in severity to any listing, the ALJ then assesses the claimant's residual functional capacity. *Id.*

Social Security Rule 96–8p provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

In assessing a residual functional capacity ("RFC") for mental abilities, the ALJ must assess the nature and extent of claimant's mental limitation and restrictions and then determine the residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. 404.1545(c); 20 C.F.R. 416.945. "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.*

In this case, the ALJ did rely on GAF scores that ranged from 55-65 in 2005 and 2006 in determining that Plaintiff's mood disorder was not a severe impairment under the regulations. (TR 26). However, the ALJ also relied on medical records related to

Plaintiff's treatment and diagnosis for a mood disorder. (TR 26). Moreover, the ALJ found that Plaintiff has (1) mild limitations in daily living; (2) mild limitations in social functioning; (3) moderate limitations in concentration persistence or pace, and (4) no episodes of decompensation. (TR 27). The ALJ then went on to explain the basis for these conclusions with specific reference to Plaintiff's medical records, including psychiatric progress notes and psychiatric symptoms. (TR 27). As a result, the ALJ found that Plaintiff's mood disorder does not cause more than minimal limitations in the Plaintiff's ability to perform basic mental work activities and is nonsevere. (TR 27).

The ALJ's conclusion that Plaintiff's mood disorder did not cause more than minimal limitations in her ability to perform basic mental work is supported by the record. (*See* Doc. 25 at 25-26 (citing to evidence in the Record supporting ALJ's determination)); *Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012) (finding that, even if ALJ fails to give appropriate reasons for his decision, if the record supports his ultimate conclusion, the ALJ's failure to properly explain that conclusion is harmless error).

### 3. Whether the ALJ erred in Determining Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ's assessment of Plaintiff's residual functional capacity was unsupported by any evidence in the record. The ALJ found that Plaintiff has the residual functional capacity to perform the exertional requirements of light work with restrictions as light work and that she is further limited to unskilled work. (TR 27-28). The ALJ found that Plaintiff required a sit/stand option and cannot crawl, crouch, climb, squat, or kneel and that she has no use of lower extremities for pushing/pulling, and no use of the upper extremities for work above shoulder level. (TR 27-28).

In determining Plaintiff's residual functional capacity, the ALJ determined that Plaintiff's subjective complaints were not fully credible, that the medical evidence demonstrated that claimant's degenerative disc disease is mildly to moderately severe at worst, that in December 2004 Plaintiff had a good range of motion throughout her spine

with no radiculopathy, that with physical therapy, Plaintiff's back pain improved substantially, that Plaintiff's daily activities did not keep her from preforming activities of daily living and attending college, and that Plaintiff's headaches and general body pain from fibromyalgia had been generally well-controlled with medication. (TR 29). The ALJ also relied on the medical source statement of Dr. Palmer that claimant had the ability to perform a least a broad range of light work. (*Id.*).[1]

The ALJ determines the residual functional capacity based on "all of the relevant medical and other evidence." 20 C.F.R. §404.1545(3).

As discussed above, the ALJ did consider the medical and other evidence in determining Plaintiff's residual functional capacity. As a result, the ALJ's analysis of Plaintiff's personal limitations are sufficiently detailed to support his RFC determination and Plaintiff's assertions that the ALJ erred by determining Plaintiff's residual functional capacity without any basis in the record and by failing to make a RFC determination based on the individualized facts of her case is without merit.

### B. Whether the ALJ erred in Rejecting the Assessment of Plaintiff's Treating Nurse Practitioner

Plaintiff next argues that the ALJ improperly rejected the opinion of a nurse practitioner who treated Plaintiff. Nurse practitioner Meinders opined that Plaintiff had "moderately severe" pain that limited her to less than sedentary work. The ALJ rejected the nurse practitioner's opinion because a nurse practitioner is not an "acceptable medical source" under the regulations, the limitations assigned by the nurse practitioner were supported by few specific findings, and the nurse practitioner reached most of her medical opinions based on Plaintiff's subjective complaints. (TR 30).

Plaintiff argues that the medical evidence did support the nurse practitioner's findings and that the ALJ erred in assigning great weight to the opinion of one-time examiner, Dr. Palmer, because it was not supported by the record as a whole.

---

[1] The Court will discuss Plaintiff's objections to the ALJ's reliance on Dr. Palmer below.

Nurse practitioners are defined as "other sources," in 20 C.F.R. § 404.1513(d)(1) and are not entitled to the same deference as other types of providers. *Molina*, 674 F.3d at 1111-1112 (citing 20 C.F.R. § 404.1527 and SSR 06–03p). "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Id.* (internal quotations and citations omitted).

Plaintiff admits that Meinders is not a medically acceptable treating source, but argues that the ALJ's reasons for rejecting Meinders' opinions were not supported by the Record. In Response, the Commissioner argues that the ALJ's reasons were supported by the record because (1) nurse practitioner Meinders' opinions were supported by few specific findings, and (2) nurse practitioner's Meinders' statement was based on Plaintiff's subjective complaints. The Commissioner argues that an opinion is properly discounted where it was conclusory or unsupported by medical evidence and, because the ALJ found Plaintiff's subjective reports not to be credible, it was proper to use that evaluation when evaluating Meinders' opinions, which were based on Plaintiff's subjective complaints. (Doc. 25 at 18-19).

Indeed, the ALJ rejected nurse practitioner Meinders' conclusions because those opinions were supported by few specific findings and based on Plaintiff's subjective complaints rather than objective medical evidence. These reasons are germane because a medical opinion may be discounted where it is conclusory and not supported by objective medical evidence. *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

Plaintiff also argues that the ALJ erred in assigning great weight to the opinion of Dr. Palmer because he is not an orthopedic specialist, but is a family practice physician. Plaintiff argues that the ALJ erred by failing to provide independent evidence in support of his decision to assign greater weight to the nontreating sources' opinions over the assessments of Plaintiff's treating nurse practitioner. Contrary to Plaintiff's argument, as noted above, the ALJ did provide germane reasons for discounting the opinions of Plaintiff's nurse practitioner. Moreover, as discussed above, there is substantial evidence of record supporting the ALJ's decision that Plaintiff is not disabled. *Batson,* 359 F.3d at

1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted).

As such, Plaintiff has failed to show that the ALJ erred in including the opinion of Dr. Palmer in the overall analysis of Plaintiff's RFC and rejecting the opinion of nurse practitioner Meinders in the overall analysis of Plaintiff's RFC.

### IV.   CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 20th day of August, 2013.

James A. Teilborg
Senior United States District Judge